IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTANY IVINS, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS-STATE CORRECTIONAL INSTITUTION AT GRATERFORD, | : | |
| Defendant | : | No. 17-5777 |

**DEFENDANT'S**
**PRETRIAL MEMORANDUM**

**A. FACTUAL SUMMARY**

Plaintiff was a probationary Pennsylvania Department of Corrections ("DOC") employee who was terminated for her inability to adhere to the DOC's time and attendance standards. Her undisputed violations occurred throughout her employment, and resulted in progressive discipline, culminating with her termination.

Proceeding to trial are Title VII claims under two theories: (1) Plaintiff was subject to a hostile work environment and (2) her termination was in retaliation for complaining about it.

Plaintiff was hired as a Corrections Officer Trainee on October 5, 2015. Shortly thereafter she spent four weeks at the DOC's training academy. Plaintiff otherwise worked exclusively at the State Correctional Institution at Graterford ("SCI Graterford") throughout her employment, until it ended on September 19, 2016.

Between November 2015 and March 2016, Plaintiff had seven unexcused absences. These absences were each noted in Plaintiff's reviews. Following her March 2016 absences Plaintiff received a written reprimand from training Lieutenant Boone, warning that future violations could result in more severe sanctions, including termination.

Plaintiff had two more attendance violations in mid-June and then two more in mid-July. The June violations resulted in a counseling session, which again warned that termination could result from further violations. The July violations resulted in her termination. Plaintuiff does not and cannot dispute this evidence.

Meanwhile, in December 2015, Plaintiff began a romantic relationship with a Corrections Officer 1, named Jeremy Reimert. Relationships between co-workers are not precluded by the DOC and are common at SCI Graterford. By Plaintiff's own admission, this relationship continued in some form until July 2016. As late as May 24, 2016, Plaintiff and Reimert had jointly signed a lease for an apartment they intended to share starting July 1, 2016.

Plaintiff does not dispute that she was aware of the DOC's policy on sexual harassment. As this Court has ruled, Reimert was not considered Plaintiff's "supervisor" for purposes of her claims. Accordingly, what Plaintiff reported to her employer, when she reported it, and what happened afterwards are critical.

Assuming Plaintiff testifies consistently with her prior sworn testimony, she will testify that she first began to complain about Reimert's behavior after her mid-June absences and after Reimert had begun a period of FMLA leave (June 17, 2016), and that she complained about Reimert's treatment of her outside of the workplace, during their personal time, and not about any conduct that had occurred at work.

The exact timing of these complaints is in dispute. Plaintiff testified that, shortly after her June 2016 absences, she spoke to training Sergeants, J. Hall and N. Davis, her training Lieutenant Heidi Glenn, and HR Director Dana Williams about Reimert's behavior. Williams and Lt. Glenn testified that Plaintiff did not say anything about her relationship with Reimert

until August, at which point Pre Disciplinary Conference ("PDC") proceedings had begun for her July 2016 attendance violations.

Plaintiff testified that she also contacted the State Employees Assistance Program ("SEAP"). As witnesses for the DOC will make clear, SEAP is a confidential statewide program that provides assistance and resources for any state employee dealing with personal issues. The employer is <u>not</u> notified when an employee contacts SEAP and has no access to SEAP records.

As noted, the July 2016 attendance violations resulted in PDC proceedings. With Plaintiff's job in jeopardy, and her relationship with Reimert apparently over, Plaintiff blamed Reimert for those violations. This is reflected in Lt. Glenn's summary of her August 12, 2016 interview with Plaintiff and the summary of the September 9, 2016 PDC conducted by Labor Relations Analyst Michael Romascavage and Deputy Superintendent George Ondrejka. Plaintiff also provided written statements at both proceedings.

Plaintiff also, for the first time, involved the police, obtaining a protection for abuse ("PFA") order against Reimert on August 2, 2016. After notifying Dana Williams of the PFA, on August 15, 2016, Superintendent Cynthia Link issued a letter to Reimert precluding his return to work until the matter was resolved.

On September 19, 2016, Superintendent Link reviewed the PDC materials and decided on the sanction of termination. In doing so, and as authorized by DOC policy and practice, she considered the totality of the circumstances, including Plaintiff's extensive history of attendance violations.

Meanwhile Reimert obtained a PFA against Plaintiff in early August. As reflected in that document and his deposition testimony, Reimert disputes nearly every aspect of their relationship as described by Plaintiff. It is anticipated that he will testify that Plaintiff was one

who was emotionally and physically abusive, throwing things at him, once causing a scar and attempting to create a rift in his relationship with his young son.

Plaintiff eventually filed a charge with the EEOC and PHRC, citing harassment by Reimert.  The EEOC ultimately issued a right to sue letter and Plaintiff brought this federal lawsuit.

Meanwhile, Plaintiff also challenged her dismissal through the State Civil Service Commission.  A hearing was held in August 2017 and in October 2018 the SCSC issued its adjudication in DOC's favor.

## B. DEFENDANT'S PROPOSED NON-EXPERT WITNESSES (all liability unless otherwise noted)

Defendant may call one or more of the following witnesses to testify, depending on developments at trial.

1. Dana Williams
   Field Human Resources Officer at SCI Phoenix[1]
   Subject: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

2. Lt. Heidi Glenn
   SCI Phoenix
   Subject: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

3. Lt. Richard Boone
   SCI Phoenix
   Subject: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

4. Sgt. Jonathan Hall
   SCI Phoenix
   Subject: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

---

[1] In the summer of 2018, SCI Graterford closed and was replaced by a new facility on the same property, SCI Phoenix.

5. Sgt. Nicole Davis
   SCI Phoenix
   <u>Subject</u>: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

6. Cynthia Link,
   former SCI Graterford Superintendent
   <u>Subject</u>: describe plaintiff's employment history, decisions regarding plaintiff's employment, and applicable policies and practices.

7. Michael Romascavage,
   former SCI Graterford Labor Relations Analyst
   <u>Subject</u>: describe plaintiff's employment history, decisions regarding plaintiff's employment, and applicable policies and practices.

8. Corrections Officer Jeremy Reimert
   SCI Phoenix
   <u>Subject</u>: describe his relationship with Plaintiff and plaintiff's employment history, decisions regarding plaintiff's employment, and applicable policies and practices.

9. Lt. Ronald Martin
   SCI Phoenix
   <u>Subject</u>: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

10. Lt. Marcus Taylor
    SCI Phoenix
    <u>Subject</u>: describe plaintiff's employment history, interaction with plaintiff, and applicable policies and practices.

11. Dennis Brumfield, Deputy Superintendent for Facility Management
    SCI Phoenix
    <u>Subject</u>: describe plaintiff's employment history, her interaction with plaintiff, and applicable policies and practices.

## C. DEFENDANT'S PROPOSED EXPERT WITNESSES

None.

## D. EXPERT WITNESSES CURRICULUM VITAE

Not applicable.

### E. DESIGNATION OF VIDEOTAPED TRIAL TESTIMONY

None.

### F. DESIGNATION OF DEPOSITION TESTIMONY TO BE OFFERED AT TRIAL

None.

### G. MONETARY DAMAGES CLAIMED

Not applicable to Defendant. Defendant notes that punitive damages are not recoverable against it under Title VII.

### H. STIPULATIONS

In accordance with the Amended Scheduling Order, on April, 8, 2019 Defendant served Plaintiff with the below proposed stipulations. Plaintiff has yet to respond.

1. Ms. Ivins began working for the Pennsylvania Department of Corrections ("DOC") on October 5, 2015. Pl. Dep. at 33:2-6.

2. Ms. Ivins was a Corrections Officer Trainee in probationary status at all times during her DOC employment, which concluded on September 19, 2016. Pl. Dep. at 33:7-10, 33:21-34:5.

3. For a four-week period early in her employment Ms. Ivins attended the DOC's training academy in Elizabethtown. Pl. Dep. at 34:10-13, 36:19-37:3.

4. Ms. Ivins otherwise worked exclusively at the State Correctional Institution at Graterford ("SCI Graterford"). Pl. Dep. at 36:9-37:3.

5. Ivins received instruction on SCI Graterford's time and attendance policies. Pl. Dep. at 2-4.

6. Throughout Ivins's employment, the DOC had a policy on sexual harassment. Dep. Exh. Ivins-1.

7. On October 5, 2015, Ivins received and reviewed the DOC's sexual harassment policy, 1.6.2 "Sexual Harassment."  Pl. Dep. at 49:14-50, Dep. Exh. Ivins-1.

8. Under that policy, an employee could make a report of sexual harassment to the human resources department, a supervisor or the DOC's Office of Equal Opportunity.  Pl. Dep. at 50:8-22; Exh. D-1 DOC Policy on Sexual Harassment.

9. Throughout her employment, Ms. Ivins received monthly Employee Performance Reviews ("EPRs") from her assigned Training Lieutenant.  Pl. Dep. at 78:23-79:2.

10. On April 20, 2016 Ms. Ivins received a Written Reprimand for unacceptable attendance.

11. On April 22, 2016 Ms. Ivins received a letter from SCI Graterford Human Resources Officer Dana Williams regarding her attendance.

12. On June 29, 2016, Lieutenant Glenn interviewed Ms. Ivins about her use of leave on June 16 and 18.  Pl. Dep. at 109:7-25; Dep. Exh. Ivins-8.

13. On July 12, 2016, Ms. Ivins received a counseling session on time and attendance.  Pl. Dep. At 134:6-136:6; Dep. Exhs. Ivins-9, Glenn-2.

14. On August 12, 2016, Lieutenant Glenn interviewed Ms. Ivins about her use of leave on July 14 and July 19.  Pl. Dep. at 138:25-140:1; Glenn Dep. at 29:17-30:3; Dep. Exhs. Ivins-11, Glenn-3.

15. On September 9, 2016, Ms. Ivins attended a Pre-Disciplinary Conference conducted by Michael Romascavage, Labor Relations Analyst, and George Ondrejka, SCI Graterford's Deputy Superintendent for Internal Security.  Glenn Dep. at 46:13-48:19; Link Dep. at 61:21-64:5; Dep. Exh. Link-4.

16. Ms. Ivins was terminated as of September 16, 2016.  Dep Exh. Ivins-16.

## I. OBJECTIONS TO EVIDENCE

Plaintiff's list of exhibits includes several deposition transcripts, and other legal documents generated during the course of this litigation that are presumably for impeachment purposes, but not themselves admissible exhibits.

## J. OTHER ANTICIPATED LEGAL ISSUES

As the summary judgment record established, Plaintiff's complaints to her employer were about Reimert's conduct outside of work, after he was on FMLA leave. However, at summary judgment, Plaintiff, in support of her hostile work environment claim, introduced Plaintiff's deposition testimony about alleged harassment by Reimert at work prior to his FMLA leave and alleged harassment by employees other than Reimert. Given what was reported to the employer, this evidence is not relevant to the remaining claims and unfairly prejudicial. Moreover, there is no allegations of this type of harassment in the EEOC charge or the Complaint in this action. Defendant anticipates filing a motion in limine in further support of this argument.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   s/ Kevin Bradford

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRITTANY IVINS, | : CIVIL ACTION |
| Plaintiff | : |
| v. | : |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS-STATE CORRECTIONAL INSTITUTION AT GRATERFORD, | : |
| Defendant | : No. 17-5777 |

**CERTIFICATE OF SERVICE**

I, Kevin R. Bradford, hereby certify that the Pretrial Memorandum has been filed electronically on April 15, 2019 and is available for viewing and downloading from the Court's Electronic Case Filing System ("ECF"). The following parties are listed as ECF Filing Users and are therefore automatically served by electronic means:

- **SIDNEY L. GOLD**
  sgold@discrimlaw.net,ashields@discrimlaw.net,ddrages@discrimlaw.net
- **WILLIAM RIESER**
  brieser@discrimlaw.net,ashields@discrimlaw.net,sgold@discrimlaw.net,ddrages@discrimlaw.net

By:   s/ Kevin Bradford

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section