IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTANY IVINS, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS-STATE CORRECTIONAL | : | |
| INSTITUTION AT GRATERFORD, | : | |
| | : | |
| Defendant | : | No. 17-5777 |

**DEFENDANT'S**
**<u>PROPOSED JURY INSTRUCTIONS</u>**

Defendant Pennsylvania Department of Corrections-State Correctional Institution at Graterford, by and through counsel, hereby submits the following Proposed Jury Instructions. In accordance with the Court's procedures, the parties attempted to draft joint instructions. While the parties generally agreed on the particular Third Circuit Model Civil Instructions that should be read to the jury, with respect to each of those instructions, they could not agree on certain details, despite their best efforts. To assist the Court, the language that Defendant proposed that Plaintiff does not agree to is ***italicized and in bold***.

                                                    Respectfully submitted,

                                                    JOSH SHAPIRO
                                                    Attorney General

                               By:    s/ Kevin Bradford
                                                    Kevin R. Bradford

Office of Attorney General               Senior Deputy Attorney General
1600 Arch St., Suite 300                 Attorney I.D. No. 88576

Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section

**Title VII Introductory Instruction**

In this case, the Plaintiff, Brittany Ivins, makes a claim under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, Ms. Ivins claims that *(1) she was subjected to a hostile work environment based on sex, and (2) the DOC fired her in retaliation for complaining of sexual harassment in the workplace.*[1]

The DOC denies that Ms. Ivins was discriminated against in any way. *Further, the DOC asserts that it cannot be liable for Ms. Ivins hostile work environment because it sufficiently addressed any workplace harassment.*

I will now instruct you more fully on the issues you must address in this case.

Third Circuit Model Civil Jury Instruction 5.0

---

[1] At summary judgment the Court identified the two Title VII claims that survived that stage as "whether Defendant subjected her to a hostile work place environment and whether Defendant retaliated against her for filing a sexual harassment complaint against Reimert." ECF No. 21, p. 11. The defendant's proposed instructions carefully track these parameters.

Based on discussions with counsel, Plaintiff's proposed instructions will regularly describe Plaintiff's hostile work environment claims as claims of hostile work environment *and/or sexual harassment*. This is confusing and misleading - a hostile work environment is a type of sexual harassment precluded by Title VII. See Ogilvie v. N. Valley EMS, Inc., No. CIV.A.07-485, 2008 WL 4761717, at *6 (E.D. Pa. Oct. 29, 2008) (noting there are two types of sexual harassment under Title VII: hostile work environment or quid pro quo.) (*citing* Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65-66 (1986)).

**Elements of a Title VII Action — Harassment — Hostile Work Environment**

**("No Tangible Employment Action" instruction)**

Ms. Ivins claims that she was subjected to *harassment by Mr. Reimert and that this harassment was motivated by Ms. Ivins' sex.*[2]

The DOC is liable *for the actions of Mr. Reimert in Ms. Ivins' claim of harassment* if Ms. Ivins proves all of the following elements by a preponderance of the evidence:

First: Ms. Ivins was subjected to sexual harassment **by Mr. Reimert**.

Second: *Mr. Reimert's* conduct was not welcomed by Ms. Ivins.

Third: *Mr. Reimert's* conduct was motivated by the fact that Ms. Ivins is a woman.

Fourth: The conduct was so severe or pervasive that a reasonable person in Ms. Ivins' position would find Ms. Ivins' work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable woman's reaction to Ms. Ivins' work environment.

Fifth: Ms. Ivins believed her work environment to be hostile or abusive *as a result of Mr. Reimert's conduct*.

Sixth: Management level employees knew, or should have known, of the abusive conduct. Management level employees should have known of the abusive conduct if: 1) an employee provided management level personnel with enough information to raise a probability

---

[2] Plaintiff objects to the use of any language attributing the harassment only to Reimert. The model instruction contemplates that a certain person or persons will be the source of the alleged harassment. To the extent that any harassment was by someone other than Reimert, Plaintiff speculates that Reimert was behind it. This is how the claim was treated at summary judgment. There is no evidence that Plaintiff complained to the DOC about harassment from anyone other than Reimert.

of sexual harassment in the mind of a reasonable employer, or if 2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

If any of the above elements has not been proved by a preponderance of the evidence, your verdict must be for the DOC and you need not proceed further in considering this claim. If you find that the elements have been proved, then you must consider the DOC's affirmative defense.  I will instruct you now on the elements of that affirmative defense.

You must find for the DOC if you find that the DOC has proved both of the following elements by a preponderance of the evidence:

First: The DOC exercised reasonable care to prevent harassment in the workplace on the basis of sex, and also exercised reasonable care to promptly correct any harassing behavior that does occur.

Second: Ms. Ivins unreasonably failed to take advantage of any preventive or corrective opportunities provided by the DOC.

Proof of the four following facts will be enough to establish the first element that I just referred to, concerning prevention and correction of harassment:

1. The DOC had established an explicit policy against harassment in the workplace on the basis of sex.

2. That policy was fully communicated to its employees.

3. That policy provided a reasonable way for Ms. Ivins to make a claim of harassment to higher management.

4. Reasonable steps were taken to correct the problem, if raised by Ms. Ivins.

On the other hand, proof that Ms. Ivins did not follow a reasonable complaint procedure provided by the DOC will ordinarily be enough to establish that Ms. Ivins unreasonably failed to take advantage of a corrective opportunity.

*A remedial action is adequate if it is reasonably calculated to prevent further harassment. An employer need not discipline the alleged harasser to meet this standard.*[3]

Third Circuit Model Civil Jury Instruction 5.1.5 (except final paragraph)

---

[3] Jones v. SEPTA, No. 16-4205, 2017 WL 4386994, at *7 (E.D.Pa. Oct. 3, 2017) (*citing* Knabe v. Boury Corp., 114 F.3d 407, 415 (3d Cir. 1997)).

**Elements of a Title VII Claim — Retaliation**

Ms. Ivins claims that the DOC discriminated against her because of her complaints of *sexual harassment*.

To prevail on this claim, Ms. Ivins must prove all of the following by a preponderance of the evidence:

First: Ms. Ivins made a complaint of *sexual harassment*.

Second: Ms. Ivins was subjected to a materially adverse action at the time, or after, the protected conduct took place.

Third: There was a causal connection between Ms. Ivins' termination and Ms. Ivins' complaint *of harassment by Mr. Reimert*.

Concerning the first element, Ms. Ivins need not prove the merits of her complaint *of harassment by Mr. Reimert*, but only that she was acting under a reasonable, good faith belief that Ms. Ivins' right to be free from discrimination on the basis of sex was violated.

Concerning the second element, the term "materially adverse" means that Ms. Ivins' must show that her termination was serious enough that it well might have discouraged a reasonable worker from making a complaint of *harassment by a coworker*.

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is the DOC's action followed shortly after the DOC became aware of Ms. Ivins' complaint *of sexual harassment by Mr. Reimert*. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Ms. Ivins or a change in demeanor toward Ms. Ivins.

- 6 -

Ultimately, you must decide whether Ms. Ivins' complaint of sexual harassment ***by Mr. Reimert*** had a determinative effect on ***how her attendance violations were treated***. "Determinative effect" means that if not for Ms. Ivins' complaint ***of harassment by Mr. Reimert***, her termination would not have occurred.

Third Circuit Model Civil Jury Instruction 5.1.7

**Title VII Damages — Compensatory Damages — General Instruction**

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the DOC should be held liable.

If you find by a preponderance of the evidence that the DOC intentionally discriminated against Ms. Ivins by subjecting her to a hostile work environment *and/or fired her in retaliation for complaining of sexual harassment*,[4] then you must consider the issue of compensatory damages.  You must award Ms. Ivins an amount that will fairly compensate her for any injury she actually sustained as a result of the DOC's conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Ms. Ivins in the position she would have occupied if the discrimination had not occurred. Ms. Ivins has the burden of proving damages by a preponderance of the evidence.

Ms. Ivins must show that the injury would not have occurred without the DOC's conduct. Ms. Ivins must also show that the DOC's actions played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of the DOC's conduct. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether the DOC's conduct was motivated by discrimination or retaliation. In other words, even assuming that the DOC's conduct was motivated by discrimination or retaliation, the DOC is not entitled to damages for an injury unless the DOC's conduct actually played a substantial part in bringing about that injury.

---

[4] Undersigned counsel is uncertain if this language is in dispute.  It is flagged just in case.

- 7 -

*There can be more than one cause of an injury. To find that the DOC's injury, you need not find that the DOC's conduct was the nearest cause, either in time or space. However, if Ms. Ivins' injury was caused by a later, independent event that intervened between the DOC's conduct and Ms. Ivins' injury, the DOC is not liable unless the injury was reasonably foreseeable by the DOC.*

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Ms. Ivins experienced as a consequence of the DOC's conduct. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Ms. Ivins would have earned, either in the past or in the future, if she had continued in employment with the DOC. These elements of recovery of wages that Ms. Ivins would have received from the DOC are called "back pay" and "front pay". Under the applicable law, the determination of "back pay" and "front pay" is for the court.

You may award damages for monetary losses that Ms. Ivins may suffer in the future as a result of the DOC's conduct. For example, you may award damages for loss of earnings resulting from any harm to Ms. Ivins' reputation that was suffered as a result of the DOC's conduct.

Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, she may find it more difficult to be employed in the future, or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Ms. Ivins would have earned in the future from the DOC if she had retained the job.

As I instructed you previously, Ms. Ivins has the burden of proving damages by a preponderance of the evidence. But the law does not require that Ms. Ivins prove the amount of her losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

*You are instructed that Ms. Ivins has a duty under the law to "mitigate" her damages-- that means that Ms. Ivins must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by Ms. Ivins. It is the DOC's burden to prove that Ms. Ivins has failed to mitigate. So if the DOC persuades you by a preponderance of the evidence that Ms. Ivins failed to take advantage of an opportunity that was reasonably available to her, then you must reduce the amount of Plaintiff's damages by the amount that could have been reasonably obtained if she had taken advantage of such an opportunity.*

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

Third Circuit Model Civil Jury Instruction 5.4.1

- 9 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTANY IVINS, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS-STATE CORRECTIONAL INSTITUTION AT GRATERFORD, | : | |
| Defendant | : | No. 17-5777 |

**CERTIFICATE OF SERVICE**

I, Kevin R. Bradford, hereby certify that the Defendant's Proposed Jury Instructions in further support of Defendant's Motion for Summary Judgment has been filed electronically on May 7, 2019 and is available for viewing and downloading from the Court's Electronic Case Filing System ("ECF"). The following parties are listed as ECF Filing Users and are therefore automatically served by electronic means:

- **SIDNEY L. GOLD**
  sgold@discrimlaw.net,ashields@discrimlaw.net,ddrages@discrimlaw.net
- **WILLIAM RIESER**
  brieser@discrimlaw.net,ashields@discrimlaw.net,sgold@discrimlaw.net,ddrages@discrimlaw.net

By:  s/ Kevin Bradford

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov