IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTANY IVINS, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS-STATE CORRECTIONAL INSTITUTION AT GRATERFORD, | : | |
| Defendant | : | No. 17-5777 |

**DEFENDANT'S BRIEF ON**
**BACK PAY AND FRONT PAY ISSUE**

## I.   INTRODUCTION

Plaintiff Brittany Ivins, a former Corrections Officer Trainee, brought this employment action against the Pennsylvania Department of Corrections-State Correctional Institution at Graterford ("DOC"). Proceeding to jury trial were two claims, both brought under Title VII of the Civil Rights Act of 1964 ("Title VII"): (1) the DOC subjected Plaintiff to a hostile work environment during her employment and (2) the DOC terminated her in retaliation for complaining about it. The jury found in Plaintiff's favor on the hostile work environment claim and found in the DOC's favor on the retaliatory discharge claim.

Plaintiff was not constructively discharged and the jury found that Plaintiff's termination was not retaliatory, making her ineligible for back pay or front pay. Plaintiff, however, refuses to concede this point. Accordingly, the Court has ordered the parties to brief the issue. As explained below, the Court should find Plaintiff ineligible for back pay or front pay.

## II.  SUMMARY OF RELEVANT TRIAL EVIDENCE

1. Plaintiff began working as Corrections Officer Trainee for the DOC on October 5, 2015. N.T. 5/21/19 at 33:9-14.

2. In December 2015, Plaintiff began a sexual relationship with a Corrections Officer 1, Jeremy Reimert, which lasted in some fashion until the end of July 2016.  N.T. 5/22/19 at 124:25-125:9, 127:25-128:1.

3. Plaintiff testified that in April 2016 she went out for drinks with one of her training sergeants who told Plaintiff that Reimert had told him that Plaintiff was tired because she had been out with him all night.  N.T. 5/21/19 at 41:23.

4. Plaintiff testified that while they were both at work Reimert would find out where she was assigned and would frequently call or visit her at her post.  N.T. 5/21/19 at 42:7-12, 43:20-44:3.

5. Plaintiff testified that in April, while outside of work, she attempted to get back from Reimert the keys to her apartment that she had given him and he physically assaulted her, causing swollen wrists.  N.T. 5/21/19 at 43:20-44:11.

6. Plaintiff then testified that Corrections Officer Jalloff called Plaintiff while they were at the prison to talk about Plaintiff's relationship with Reimert and that Jalloff told Plaintiff that Reimert had told her to make that call.  N.T. 5/21/19 at 5:18-23.

7. Plaintiff then testified that Corrections Officer Evans told Plaintiff that Reimert had told him about their sexual relationship and that Reimert was really upset about hurting Plaintiff. N.T. 5/21/19 at 46:15-19.

8. Plaintiff then testified that an inmate called "G" talked to Plaintiff about her relationship with Reimert. N.T. 5/21/19 at 46:20-47:1.

9.  Plaintiff then testified that Officer Green told Plaintiff that he heard that she gave the best head. N.T. 5/21/19 at 47:10-11.

10. Plaintiff then testified that while at a smoking area Officer Sompel told Plaintiff that "the joke with the others he was friends with, is can you grab your ankles and spell run r-u-n." N.T. 5/21/19 at 47:21-25.

11. Plaintiff testified that another officer then asked Plaintiff if Reimert "was banging at the back door good enough." N.T. 5/21/19 at 47:25-48:1.

12. Plaintiff testified that another officer then asked Plaintiff "if she was a squirter?" N.T. 5/21/19 at 48:3.

13. There was no testimony or evidence that any of the above events, or any other conduct occurring at work, caused Plaintiff to miss any time at work.

14. As of June 15, 2016, Plaintiff had six occurrences of time and attendance policy violations, all attributed to various physical health issues. N.T. 5/22/19 at 111:3-117:15.

15. Plaintiff called out on June 16, 2016 and June 18, 2016, both of which were considered violations of the time and attendance policy. N.T. 5/22/19 at 121:17-23.

16. Plaintiff testified that these call outs were due to Reimert's treatment while they were together outside of work. N.T. 5/21/19 at 48:8-49:4, 50:22-24.

17. On June 16, 2016, Reimert began a period of leave that did not end until after Plaintiff's termination. N.T. 5/22/19 at 127:12-17.

18. Plaintiff never encountered Plaintiff at work after Reimert began that period of leave. N.T. 5/22/19 at 127:18-24.

19. Plaintiff received a counseling session on July 12 as a result of the June 2016 time and attendance violations. N.T. 5/22/19 at 120:7-12; Exh. 11.

20.     Plaintiff was late to work on July 14, 2016 and called out less than an hour before her shift on July 19, 2016, both of which are time and attendance violations. N.T. 5/22/19 at 123:7-17.

21.     Plaintiff testified that she was late to work on July 14, 2016 because Reimert was texting her incessantly which caused her to miss her exit. N.T. 5/22/19 at 123:7-10.

22.     Plaintiff testified that she called out on July 19, 2016 because Reimert's conduct had made her too upset to work. N.T. 5/22/19 at 123:11-17.

23.     Following disciplinary proceedings, on September 19, 2016, Plaintiff was terminated for her July 2016 time and attendance policy violations. N.T. 5/22/19 at 151:20-152:3, Exhibit 22.

## III.  ARGUMENT

"Back pay and front pay are equitable remedies that are to be distinguished from the compensatory damages to be determined by the jury under Title VII." Third Circuit Model Civil Jury Instruction 5.4.1, p. 73. The Third Circuit examined the remedy of back pay in Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311 (3d Cir. 2006) The Third Circuit noted that back pay is a form of equitable relief that the trial court has the discretion to award to a prevailing Title VII plaintiff in appropriate circumstances. Id. at 315. In exploring the history of relief available to a Title VII plaintiff, the Court explained that compensatory damages were added in 1991 to address individuals "who were victims of a hostile work environment but were not constructively discharged" and did not eliminate back pay. Id. (*quoting* Landgraf v. USI Film Prods., 511 U.S. 244, 283 (1994)). The Third Circuit went on to state, "[w]e hold that a successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award." Id. at 317. "Put simply, if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue." Id.

Plaintiff's hostile work environment claim was based upon harassment she suffered *at work*. The jury found in her favor on that claim and awarded her $275,000 in compensatory damages based upon approximately four sexual comments by coworkers at work. Plaintiff presented no evidence that this harassment at work caused her to abandon her job, or incur any workplace infraction of any type that put her job at risk. Rather Plaintiff testified that she was doing well at work at the time she was terminated for her time and attendance violations. N.T. 5/22/19 at 91:3. She fought the disciplinary proceedings that led to her termination at every stage of the disciplinary process.

Plaintiff did separately challenge her termination in this case through her retaliation claim. It is undisputed that the reason the DOC provided for Plaintiff's termination was her time and attendance violations. It is also undisputed that Plaintiff did have eight occurrences during her employment. However, Plaintiff contended that the DOC would have excused the final violation or at least issued lesser discipline had she not complained of a hostile work environment. The jury rejected that argument.

There was no constructive discharge here. As the Seventh Circuit has explained, "we can make it no plainer than to reiterate that constructive discharge 'refers to a situation in which the employee is not fired but quits.' " Equal Employment Opportunity Comm'n v. Costco Wholesale Corp., 903 F.3d 618, 628 (7th Cir. 2018) (*quoting* Jordan v. City of Gary, 396 F.3d 825, 837 (7th Cir. 2005)) (finding that an employee who was fired for failing to return to work as ordered by her employer rather than resigning cannot bring a constructive discharge claim.) *See also* Ekweani v. Ameriprise Fin., Inc., No. CV-08-01101-PHX-FJM, 2010 WL 481647, at *9 (D. Ariz. Feb. 8, 2010) ("because the propriety for plaintiff's termination is no longer in dispute.

Plaintiff is not eligible for reinstatement, front pay, or back pay beyond the date of his termination [with respect to failure to promote claim]")

Even if it was possible for a termination to allow recovery of back pay/front pay through a hostile work environment claim, the only way that principle should apply here is if Plaintiff's time and attendance violations that contributed to the DOC's decision to terminate her for her final violations were attributed to the harassment she experienced *at work*. But that was not the case with respect to any of her numerous violations.

Plaintiff testified that the initial six occurrences were related to physical illnesses. Plaintiff blamed the final June and July violations on Reimert's abusive conduct *outside of the workplace*. If Plaintiff contends that the jury considered Reimert's conduct outside of the workplace in finding the DOC liable for the hostile work environment claim, she is essentially conceding jury error, justifying a new trial on the claim. That is because there is simply no supporting authority, and this Court has never held during this litigation,[1] that an employer's liability for a hostile work environment extends to offsite, off duty harassment between two people who happen to be coworkers.

The Court should therefore find Plaintiff ineligible for additional relief in the form of back pay or front pay.

---

[1] As this Court stated during the charging conference while discussing the hostile work environment claim:

> we do have to make sure that we're not just, you know, dealing with a claim of two people who were in a relationship engaging in any form of private harassment that has nothing to do with the workplace, that's not what this case is about.

N.T. 5/23/19 at 374:9-13.

## IV.   CONCLUSION

For the reasons stated above, the Court should find that Plaintiff is not entitled back pay or front pay.[2]

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   s/ Kevin Bradford

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov

---

[2] Due to the emergence of threshold back pay/front pay entitlement issue, Plaintiff has yet to provide the DOC with a back pay demand and the evidence supporting it. Moreover, as noted in motion in limine briefing, Plaintiff received unemployment compensation, which should be deducted from that amount. *See* Def. Response to Pl. Motion in Limine re Unemployment Compensation (ECF No. 39). If the Court does find that Plaintiff is entitled to back pay, Defendant requests that the parties be given a window of opportunity to discuss that amount and hopefully reach an agreement.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTANY IVINS, | : | CIVIL ACTION |
| Plaintiff | : : : | |
| v. | : : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS-STATE CORRECTIONAL INSTITUTION AT GRATERFORD, | : : : : | |
| Defendant | : | No. 17-5777 |

## CERTIFICATE OF SERVICE

I, Kevin R. Bradford, hereby certify that the Defendant's Brief on Back Pay and Front Pay has been filed electronically on July 10, 2019 and is available for viewing and downloading from the Court's Electronic Case Filing System ("ECF"). The following parties are listed as ECF Filing Users and are therefore automatically served by electronic means:

- **SIDNEY L. GOLD**
  sgold@discrimlaw.net,ashields@discrimlaw.net,ddrages@discrimlaw.net
- **WILLIAM RIESER**
  brieser@discrimlaw.net,ashields@discrimlaw.net,sgold@discrimlaw.net,ddrages@discrimlaw.net

By:   s/ Kevin Bradford

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov